UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ANGEL PETERSON #240544,

        Plaintiff,        Civil Action No.: 14-13000
                                      Honorable Thomas L. Ludington
v.                               Magistrate Judge Elizabeth A. Stafford

ROCKY BURRIS, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO DISMISS PLAINTIFF'S COMPLAINT [R. 1] *SUA SPONTE* AND TO DENY DEFENDANTS' MOTION TO DISMISS [R. 22] AS MOOT**

**I.    INTRODUCTION**

Plaintiff Angel Peterson, a Michigan Department of Corrections ("MDOC") prisoner proceeding *pro se,* filed her complaint under 42 U.S.C. § 1983 against Michigan State Industries ("MSI"), Rockey Burris[1], and Millicent Warren (collectively, the "MDOC Defendants"), alleging a host of violations. [R. 1]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), this case was referred to the undersigned for general case management, including review of the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and review of MDOC Defendants' motion to dismiss. [R. 31]. This Court finds the motion to dismiss to be deficient; it simply strings together

---

[1] This spelling of Burris's first name was provided in the MDOC's Motion to Dismiss, and differs from the complaint.

boilerplate legal principles without any factual discussion or analysis. [R. 22]. However, Peterson's complaint fails to state a plausible claim upon which relief can be granted. Therefore, the Court **RECOMMENDS** that the complaint be **DISMISSED *SUA SPONTE***, and that the MDOC Defendants' motion to dismiss be **DENIED AS MOOT**.

**II.     BACKGROUND**

Peterson is an inmate at MDOC's Women Huron Valley Complex ("WHV"), Warren is the warden of WHV, and Burris is a MSI dental lab technician who supervised Peterson until she was fired from the dental lab on August 27, 2012. [R. 22, PgID 101; R. 1, PgID 3, 6]. The statement of facts in Peterson's complaint primarily focuses on her termination from the MSI dental lab after Burris wrote her three counseling memos, and the grievances and appeals that followed. [R. 1, PgID 3-9].

Peterson alleges that Burris wrote the first memo to reprimand her for arguing with a coworker even though he was on sick leave when the alleged argument occurred. [*Id.*, PgID 4]. Peterson acknowledges that the second counseling memo she received from Burris was valid in that she did not store a critical tool, but she faults Burris for not identifying the date or other details regarding this transgression. [*Id.,* PgID 6]. Burris allegedly wrote the third counseling memo because of Peterson's "bad attitude" in

2

response to "extreme leaking" of the roof in her work area.  [*Id.,* PgID 6-7]. She alleges that Burris at first did not allow her to perform her work in a different area to avoid the leaking roof, but that she refused to move when Burris later permitted her to move to another seat.  [*Id.*].  Peterson states that she refused to move because she was in possession of a critical tool and because of her and Burris's negative working relationship.  [*Id.,* PgID 7].  This third counseling memo provided Burris with the grounds to terminate Peterson.  [*Id.,* PgID 7].

Peterson's statement of facts also describes an alleged incident in which "Inmate Vincincia" offered her stolen lab equipment.  Peterson said that she refused to accept the equipment, prompting Vincincia to raise her hand in anger as if to strike Peterson.  [R. 1, PgID 4].  Peterson claims that she reported the incident to Burris, and that he replied, "You get under people's skin."  [*Id.*]

According to Peterson, she grieved and reported her alleged mistreatment and wrongful termination, but MSI's area manager and Warren failed to address any of her complaints.  [*Id.*, PgID 7-9].

Peterson filed her complaint here on July 31, 2014, alleging claims of deliberate indifference, denial of equal protection and procedural due process, libel and slander, substantial burden on the exercise of her

3

religion, and sexual harassment. [R. 1].[2] She seeks injunctive relief related to her employment with MSI and compensation of $1,000,000. [*Id.*, PgID 21].

## II.  ANALYSIS

The Court has an obligation to under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to screen prisoner complaints and dismiss them *sua sponte* when they fail to state a claim, are frivolous, seek monetary relief from immune defendants. *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997). When conducting this screening, the Court bears in mind that, although the federal rules only require that that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Federal Rule of Civil Procedure 8(a)(2), the statement of the claim must be plausible.

Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

---

[2] Peterson filed a motion to amend her complaint on November 17, 2014, [R. 15], which the Court denied. [R. 39]. The only substantive change Peterson proposed in her motion to amend was to clarify that she was suing both MSI and Warren in their official and personal capacities. [R. 15, PgID 71]. For reasons described below, Peterson's claims against the MDOC Defendants are not viable regardless of the capacities in which she sues them.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, legal conclusions need not be accepted as true.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Furthermore, the Court is not required to "create a claim which [the plaintiff] has not spelled out in his pleading."

*Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Indeed, such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Here, the Court finds that Peterson has failed to state a plausible claim for relief.

**A. Deliberate Indifference**

Peterson alleges that Burris, Warren and MSI's area manager[3] were deliberately indifferent in violation of the Eighth Amendment by failing to address her complaints about Vincincia's alleged threatening behavior and the health hazard posed by the leaking ceiling. [R. 1, PgID 10-14].

---

[3] Peterson does not name MSI's area manager as a defendant in her complaint.

However, Peterson may not bring an Eighth Amendment action to recover monetary damages from prison officials because she has not alleged any actual physical injury, as required by 42 U.S.C. § 1997e(e). *See Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008). She postulates that she faces "the jeopardy of ongoing physical harm based on diagnosed high blood pressure created by the elevated stress during the included described incidents," [R. 1, PgID 21], but that is insufficient to establish § 1997e(e) standing. "A speculative injury does not vest a plaintiff with standing, and [Peterson] has merely set forth a speculative claim of injury." *King v. Deskins*, 229 F.3d 1152 (6th Cir. 2000) (unpublished).

The Court additionally notes that the alleged leaking roof did not create an excessive risk to inmate health or safety that constituted an inhumane condition of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (describing conditions of confinement that support an Eighth Amendment claim); *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (collecting cases holding that standing water and slippery floors in prisons do not violate the Eighth Amendment). Moreover, Peterson's own complaint indicates that she refused to move in order to avoid the leaking roof when Burris offered her the opportunity. [R. 1, PgID 6-7].

Therefore, Peterson's claim of deliberate indifference should be

7

dismissed.

### B. Procedural Due Process and Eleventh Amendment Immunity

Peterson argues that MSI violated her procedural due process rights. For relief, she requests the removal of Burris's counseling memos and back pay, and for the Court to order the MDOC Defendants to change the disciplinary procedures that led to her termination. [R. 1, PgID 19-21]. MSI is a bureau of MDOC, and Peterson's suit against MSI is no different than suing the State of Michigan. *Holt v. Michigan Dep't of Corr., Michigan State Indus.*, 974 F.2d 771, 772 (6th Cir. 1992); *Gene v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003). Under the Eleventh Amendment, the State is not a "person" capable of being sued under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The procedural due process claim is without merit even if Peterson intended for it to also be brought against Burris or Warren. In order to state a claim for a violation of procedural due process, a prisoner must first allege the existence of a protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Peterson alleges that she had a protected property interest in her prison job. However, a prisoner has no constitutionally protected property interest in prison employment and Michigan law vests the MDOC with complete discretion regarding prisoner

8

work assignments.  *Dobbins v. Craycraft*, 423 Fed. Appx. 550, 552 (6th Cir. 2011).  Given that, this Court has no authority to order injunctive relief related to her employment with and termination from the MSI dental lab.

Of further note, under the Eleventh Amendment, Burrell and Warren may be sued in their official capacities only for injunctive relief.[4]  *Will,* 491 U.S. at 71 & n. 10; *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992). As set forth above, Peterson's claims for injunctive relief are not viable, so her suit against Burris and Warren in their official capacities is unsustainable.

**C. Equal Protection**

Peterson claims that MSI violated her Fifth and Fourteenth Amendment rights to equal protection.  [R. 1, PgID 14-15].  To establish a *prima facie* case, she must show that she (1) was a member of a protected class; (2) was subject to an adverse employment action; (3) was qualified for the job; and (4) was treated differently from similarly situated non-minority employees for the same or similar conduct.  *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000).  The only element that Peterson satisfies is that she was subject to an adverse action.  She does not allege that she was a member of a protected class, that she was qualified for the job or

---

[4] Peterson's sues Burris in both his personal and official capacities, and she indicated in her motion to amend an intent to sue Warren in both capacities.  [R. 1, PgID 1; R. 15, PgID 71].

that similarly situated inmates were treated differently for the same or similar conduct. To the contrary, Peterson alleges that other inmates were demoted just like her. [R. 1, PgID 14-15]. Thus, her equal protection claim fails.

### D. Religious Land Use and Institutionalized Persons Act

Citing the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), Peterson claims that she has been mocked and belittled because she is a Jehovah's Witness, and she attempts to tie the alleged unfair treatment she received from Burris to her religion. [R. 1, PgID 17-18]. RLUIPA enforces the First Amendment by prohibiting institutions of confinement from substantially burdening religion absent a compelling governmental interest. 42 U.S.C. § 2000cc-1; *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005). "To establish a cognizable claim under RLUIPA, the inmate must first demonstrate that a prison policy substantially burdens a religious practice." *Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014). Peterson does not argue that a prison policy substantially burdens her right to exercise her religious practices, so her RLUIPA claim is without merit.

### E. Sexual Harassment

Peterson alleges sexual harassment under the Civil Rights Act. [R. 1,

10

PgID 18-19]. In conclusory fashion, she alleges that she was "subjected to various types of unwelcome sexual communication" and that "she was subjected to differentiated treatment because she would not participate in the verbal communication" with Burris. [*Id*. at 18]. Peterson does not identify any unwelcome sexual communication, and the only "overfamiliar" conduct she describes on the part of her coworkers was bringing Burris coffee every morning in a mug on which they had painted the word "boss." These allegations fall far short of stating a plausible claim for sexual harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-89 (1998) (describing the pervasive and severe harassment necessary to support a sexual harassment claim).

### F. Pendant State-Law Claims

In addition to her federal claims, Peterson alleged libel and slander and sexual harassment under Michigan law. [R. 1, PgID 16 &18]. If the recommendation that Peterson's federal claims be dismissed is adopted, her pendant state-law claims should be dismissed without reaching their merits. *Pilgrim v. Littlefield*, 92 F.3d 413, 417 (6th Cir. 1996).

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Peterson's complaint be **DISMISSED SUA SPONTE**, and the MDOC Defendants' motion to dismiss be **DENIED AS MOOT**. [R. 22].

Dated: May 21, 2015　　　　　　　　　s/Elizabeth A. Stafford
Detroit, Michigan　　　　　　　　　　ELIZABETH A. STAFFORD
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 21, 2015.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
