UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANGEL PETERSON,

        Plaintiff,                                     Case No. 14-cv-13000

v                                                         Honorable Thomas L. Ludington

ROCKY BURRIS, MICHIGAN STATE INDUSTRIES,
and MILLICENT WARREN,

        Defendants.

_____/

**ORDER SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS, ACCEPTING IN PART AND REJECTING IN PART MAGISTRATE'S REPORT AND RECOMMENDATION, DENYING DEFENDANTS' MOTION TO DISMISS AND REFERRING MATTER TO MAGISTRATE JUDGE FOR FURTHER PROCEEDINGS**

On July 31, 2014, Plaintiff Angel Peterson, a Michigan Department of Corrections ("MDOC") prisoner proceeding *pro se* filed a complaint under 42 U.S.C. § 1983 against Rocky Burris, Michigan State Industries, and Millicent Warren alleging numerous violations of state and federal law. Peterson's primary claim is that Defendants improperly terminated her employment in the prison dental lab.

On December 23, 2014, Defendants filed a motion to dismiss the complaint, contending that Peterson had not sufficiently alleged any specific action taken by any Defendant that violated her rights. Plaintiff filed a response on December 24, 2014.

On May 21, 2015, the Magistrate Judge issued a report recommending that Peterson's complaint be summarily dismissed for failure to state a claim and that Defendants' motion to dismiss be denied as moot. Peterson filed timely objections.

Because Peterson has not sufficiently stated a claim for violation of procedural due process, violation of the RLUIPA, and sexual harassment under federal law, these claims will be summarily dismissed as recommended by the Magistrate Judge's report. However, because

Peterson has sufficiently stated claims for deliberate indifference and violation of equal protection, these claims will not be dismissed. And because two of Peterson's federal claims survive, her state law claims will not be dismissed.

**I.**

Peterson is an inmate at MDOC's Women Huron Valley Complex. Until her employment was terminated, she worked in the Michigan State Industries' dental lab. Peterson alleges that there was "overfamiliarization" between her coworkers and the dental lab technician-supervisor, Defendant Burris. Peterson explains that her coworkers would bring Burris coffee every day, and even presented him with a hand-painted coffee mug. Her coworkers also purchased holiday cards and affectionate cards for him. Peterson did not participate in any of these events: "It was not that I didn't like him it was that my conscious does not allow me to participate in holidays and things of that nature." Objs. 2.

One day, while Burris was out to lunch, an inmate offered Peterson stolen lab equipment. Peterson refused to accept the stolen equipment, and the inmate raised her hand in anger as if to hit Peterson. The inmate did not actually hit Peterson, but Peterson reported the incident to Burris when he returned. Instead of punishing the inmate, Peterson claims that Burris told her that "You get under people's skin." Peterson claims that Burris did not punish the other inmate due to their "overfamiliarization".

Peterson also alleges that Burris improperly wrote her three counseling memos. The first memo reprimanded her for arguing with a coworker on a day that Burris had been out on sick leave: "In other words, Mr. Burris was not present when this alleged argument happened." Indeed, Peterson claims that the argument never took place, and therefore she was improperly reprimanded.

On May 30, 2012, Peterson initiated a grievance regarding the two events, which was rejected. Peterson appealed the rejection of her grievance.

While the grievance appeal was pending, Peterson received another counseling memo for leaving a critical tool out. Although Peterson asserts that it was unintentional, she concedes that this second counseling memo was valid.

On August 27, 2012, Peterson received a third counseling memo for having a "poor attitude." During a particularly heavy rain, a hole in the MSI Dental Lab ceiling began leaking. According to Peterson "[t]he conditions were so poor that some of the electricity to the lighting was disconnected in order to prevent electrocution or any other accidents that could have occurred because of the extreme leaking." Compl. 7. Despite the danger, Burris did not allow Peterson to move to another area. Instead, he permitted Peterson to move to a different seat within the same area. Peterson, however, "was reluctant to move . . . for two (2) reasons: 1) She was in possession of a critical tool . . . 2) The plaintiff's negative history with Mr. Burris . . . ." Compl. 7. As a result of Peterson's reluctance to move seats, Burris wrote the third and final counseling memo stating that Peterson had a "bad attitude." Burris then terminated Peterson's employment.

Peterson then filed additional grievances and appeals, all of which were rejected. She claims that despite exhausting all her administrative remedies, Defendants "have violated the plaintiff's constitutional rights by failing to address valid concerns that include but are not limited to Mr. Burris' ill will and retaliation against the plaintiff for questioning and reporting the deplorable work conditions, which ultimately resulted in the plaintiff being wrongfully terminated from employment in the MSI Dental Lab." Compl. 9.

On July 31, 2014, Peterson filed suit in this Court, raising six claims: (1) Deliberate Indifference in violation of the Eighth Amendment; (2) Equal Protection in violation of the Fifth and Fourteenth Amendments; (3) Libel and Slander under Michigan law; (4) Religious Discrimination in violation of the First and Fourteenth Amendments; (5) Sexual Harassment under federal and state law; and (6) Procedural Due Process under the Fourteenth Amendment.

On November 17, 2014, Peterson filed an "Amended Complaint" that added two Defendants to the litigation: Michigan State Industries and Millicent Warrant, the warden. On May 21, 2015, the Magistrate Judge issued a report recommending that Peterson's complaint be summarily dismissed for failure to state a claim.

## II.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). "Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Carson v. Hudson*, 421 F. App'x 560, 563 (6th Cir. 2011) (quoting *Souter v. Jones*, 395 F.3d 577, 585-86 (6th Cir. 2005)).

## III.

Peterson raises numerous objections to the Magistrate Judge's report, and each will be addressed in turn.[1]

### A.

Peterson first objects to the Magistrate Judge's conclusion that she has not sufficiently stated a claim for relief for deliberate indifference under the Eighth Amendment. In her complaint, Peterson alleged that Defendants were deliberately indifferent by failing to address her complaints about the other inmates' threatening behavior and the health hazard posed by the leaking ceiling. As a result, Peterson now suffers from high blood pressure and psychological

---

[1] Peterson's first, second, third, and tenth objections are general objections to the Magistrate Judge's recommendation. *See, e.g.*, Objection 1 ("Plaintiff admits the introduction description is accurate yet objects that Peterson's complaint fails to state a plausible claim upon which relief can be granted."). The Court will construe these objections as a request for *de novo* review of the entire Magistrate Judge's report.

stress. The Magistrate Judge concluded that Peterson's alleged injuries were too speculative to sustain a claim.

Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Although the majority of Peterson's complaints center on her alleged psychological stress, she does allege a physical injury: "Plaintiff suffered . . . the jeopardy of ongoing physical harm based on diagnosed high blood pressure created by the elevated stress level during the included described incidents." Compl. 21. In her objections, Peterson clarifies that Defendants' actions resulted in her suffering from high blood pressure:

> Never once in her annual medical examination had [Plaintiff] tested positive for high blood pressure. My now ongoing suffering from high blood pressure was a direct result of this mistreatment. In fact Plaintiff always tested normal or low when tested for high blood pressure.

Objs. 4.

At least one circuit court has concluded that high blood pressure is an actionable injury. In *Calhoun v. Hargrove*, 312 F.3d 730 (5th Cir. 2002), the Fifth Circuit held that the increase in the inmate's blood pressure could constitute a physical injury under § 1997e(e). The Fifth Circuit noted that severe negative impacts on a person's vital organs and certain elevated pressure may require emergency care. Therefore, an allegation of increased blood pressure to near-stroke levels was sufficient to survive summary dismissal.

Here, Peterson has not alleged the severity of her "high" blood pressure, but she has at least alleged more than *de minimis* physical injuries that survive summary dismissal. Certainly, there are outstanding issues of the severity of her high blood pressure and whether the alleged mistreatment caused the high blood pressure. But at this stage, Peterson has stated sufficient physical injury to survive summary dismissal, and her objection will be sustained.

**B.**

Peterson's next objection concerns the Magistrate Judge's recommendation that her procedural due process claim be dismissed. In her complaint, Peterson claims that her employment in the MSI dental lab was terminated without a hearing. The Magistrate Judge concluded that Peterson had failed to state a claim for procedural due process because Peterson did not have a protectable liberty interest in her prison job. Rep. & Rec. 8-9 (citing *Dobbins v. Craycraft*, 423 F. App'x 550, 552 (6th Cir. 2011). The Magistrate Judge also concluded that, in the alternative, Defendants are entitled to immunity under the Eleventh Amendment.

Peterson objects to the alternative conclusion, claiming that "[t]he Magistrate fails to address if Mr. Burris and Warren may be sued in their official capacities" and that they are not entitled to qualified immunity.

Peterson's objection is unavailing because it overlooks the main point of the Magistrate Judge's conclusion: Peterson does not have a protectable liberty interest in her prison job, and therefore any procedural due process claim against Defendants (whether in their official or individual capacities) would be unsuccessful. Accordingly, because Peterson has not identified a protected liberty interest, her procedural due process claim will be dismissed.

**C.**

Peterson next objects to the Magistrate Judge's recommendation that her equal protection claim be summarily dismissed. The Magistrate Judge concluded that Peterson had not alleged a *prima facie* case because "[s]he does not allege that she was a member of a protected class, that she was qualified for the job or that similarly situated inmates were treated differently for the same or similar conduct." Rep. & Rec. 9-10.

In her objections, Peterson clarifies that she is a member of a protected class (she is African-American),[2] that she was qualified to perform the job (she had taken classes and had performed the job in the past), and that she was treated differently when she was demoted and forced to take a pay cut (while a white inmate did not have her pay cut). Thus, Peterson has established a prima facie case for violation of her equal protection rights. Accordingly, this objection will be sustained, and the equal protection claim will not be summarily dismissed.

**D.**

Peterson next objects to the Magistrate Judge's conclusion that she had failed to state a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which enforces the First Amendment by prohibiting institutions of confinement from substantially burdening religion absent a compelling governmental interest. The Magistrate Judge noted that Peterson had not identified a *prison policy* that substantially burdened her religion; instead, Peterson claims that her supervisor did not intervene when her fellow inmates made fun of her religion. Because Peterson has not identified a prison policy that substantially burdens the exercise of her religion, her RLUIPA claim will be dismissed.

**E.**

Peterson also objects to the Magistrate Judge's conclusion that she failed to state a claim for sexual harassment. In her complaint, Peterson contends that the other inmates acted overly familiar with their boss, Defendant Burris, and that Peterson was punished for not participating. As an example, Peterson explains that the other inmates brought Defendant Burris coffee every morning and once presented him with a coffee cup that had the word "Boss" painted on the side. Peterson, however, declined to participate. The Magistrate Judge concluded that these

---

[2] Peterson also notes that she is a Jehovah's Witness. However, her equal protection claim based on her religion would fail because she notes that another inmate (who is not a Jehovah's Witness) was likewise demoted and took a pay cut. Therefore, Peterson cannot show she was treated differently simply because she is a Jehovah's Witness.

allegations "fall far short of stating a plausible claim for sexual harassment." Rep. & Rec. 11 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-89 (1998)).

Peterson acknowledges that she has not stated a claim for sexual harassment, but claims that she has asserted a claim based on "overfamiliarity". In a 2004 case, the Sixth Circuit recited the MDOC definition of "overfamiliarity": "conduct between staff and a prisoner which has or is likely to result in intimacy or a close personal association, or conduct that is contrary to the good order of the facility." *Everson v. Michigan Dep't of Corrections*, 3391 F.3d 737, 741 (6th Cir. 2004). Importantly, however, the case that Peterson relies on—*Everson*—did not involve a sexual harassment claim. Instead, *Everson* dealt with a hiring policy for prison guards that was designed to fight sexual harassment (which MDOC defined as including "overfamiliarity").[3]

MDOC's definition of sexual harassment is not the same as the legal standard for a federal sexual harassment claim. No federal court has ever upheld a claim for sexual harassment based on overfamiliarity, because overfamiliarity is not sufficient to state a claim for sexual harassment. Instead, the challenged conduct must be both (1) objectively severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and (2) subjectively regarded by the employee as creating an abusive environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Here, the conduct alleged—that her coworkers brought their male boss coffee every morning and once gave him a coffee mug—is not sufficient to state a claim for sexual harassment, as it is neither objectively severe nor pervasive enough to create a

---

[3] In summary, male and female corrections officers working for the Michigan Department of Corrections challenged the Michigan's decision to make female gender a bona fide occupational qualification for the positions of Correctional Officer and Resident Unit Officer in the housing units in the female prisons in Michigan. Michigan instituted the bona fide occupational qualification in an attempt to curb the rates of sexual harassment and assault committed by male corrections officers against female inmates. The corrections officers sued, claiming that the designation violated Title VII of the Civil Rights Act. Although some female inmates were intervening defendants in the case, they argued in support of the designation, asserting that only female correction officers should be permitted in female prisons. No inmate brought a sexual harassment claim, and the court did not conclude that a federal sexual harassment claim could be premised on "overfamiliarity."

hostile, abusive work environment. Accordingly, Peterson's federal sexual harassment claim will be dismissed.

**F.**

Peterson lastly objects to the Magistrate Judge's recommendation that her state law claims be dismissed. After recommending dismissal of Peterson's federal claims, the Magistrate Judge suggested that Peterson's pendant state-law claims should be dismissed without reaching their merits. However, because not all of Peterson's federal claims will be dismissed, Peterson's objection will be sustained.

**G.**

In summary, the Magistrate Judge's report will be adopted in part and rejected in part. Peterson's procedural due process, RLUIPA, and federal sexual harassment claims will be summarily dismissed with prejudice for failure to state a claim for which relief may be granted. However, Peterson has sufficiently alleged claims for deliberate indifference and equal protection, and therefore these claims will not be summarily dismissed. And because Peterson has remaining federal claims, her state law claims will not be summarily dismissed, either.

**IV.**

Just because some of Peterson's claims will not be summarily dismissed, however, does not automatically mean that they will survive Defendants' motion to dismiss.[4] In a three-and-a-half page brief, Defendants contend that "Peterson's Amended Complaint fails to allege any specific action by any Defendant" and therefore the Amended Complaint must be dismissed.

Peterson's Amended Complaint contains only two pieces of information: the name and address of Millicent Warren, and the name of Michigan State Industries. The Amended Complaint contains no factual allegations, descriptions of causes of action, or any other

---

[4] The Magistrate Judge did not discuss the merits of Defendants' motion to dismiss, instead recommending that it be denied as moot.

- 9 -

information necessary.  However, a Court is required to construe pro se pleadings liberally, and it is clear that Peterson's "Amended Complaint" was actually an attempt to add additional parties to her original complaint, which outlines her claims and the pertinent facts.  Indeed, in her original complaint (which only listed Burris as a Defendant), Peterson explained Warren and MSI's involvement in the events that led to her lawsuit.  Accordingly, construing Peterson's two complaints liberally, it is clear that the "Amended Complaint" was an attempt to add two new Defendants to her lawsuit.   Therefore, Defendants' motion to dismiss will be denied.

**V.**

Accordingly, it is **ORDERED** that Peterson's objections (ECF No. 41) are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that the Magistrate Judge's Report and Recommendation (ECF No. 40) is **ADOPTED IN PART AND REJECTED IN PART** and the case is **REFERRED** to the Magistrate Judge Stafford for further proceedings in accordance with this Court's general order of reference (ECF No. 31).

It is further **ORDERED** that Peterson's procedural due process, RLUIPA, and federal sexual harassment claims are **SUMMARILY DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Defendants' Motion to Dismiss (ECF No. 22) is **DENIED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: June 17, 2015

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail and on Angel Peterson #240544, Huron Valley Complex-Womens, 3201 Bemis Road, Ypsilanti, MI 48197 by first class U.S. mail on June 17, 2015.

                                  s/Karri Sandusky
                                  Karri Sandusky, Acting Case Manager