UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANGEL PETERSON,

                            Plaintiff,                           Case No. 14-cv-13000

v                                          Honorable Thomas L. Ludington

ROCKY BURRIS, et al.,                     Magistrate Judge Elizabeth A. Stafford

                          Defendants.

_____/

**ORDER OVERRULING OBJECTIONS, ADOPTING REPORT AND
RECOMMENDATION, GRANTING MOTION FOR SUMMARY JUDGMENT,
AND DISMISSING CLAIMS WITH PREJUDICE**

On July 31, 2014, Plaintiff Angel Peterson, a Michigan Department of Corrections ("MDOC") prisoner proceeding pro se filed a complaint under 42 U.S.C. § 1983 against Rocky Burris, Michigan State Industries, and Millicent Warren, alleging numerous violations of state and federal law arising out of the termination of her employment with the prison dental lab. On December 4, 2014 Defendants filed a motion to dismiss, arguing that Peterson had failed to state claims upon which relief could be granted. *See* ECF No. 22. That motion was granted in part and denied in part on June 17, 2015. *See* ECF No. 42. Her claims for deliberate indifference in violation of the Eighth Amendment and equal protection violations under the Fifth and Fourteenth Amendments survived that order, as did her state law claims.

Defendants filed a motion for summary judgment on March 21, 2016. *See* ECF No. 72. In response, Plaintiff moved to amend her complaint. *See* ECF No. 79. On January 4, 2017 Magistrate Judge Elizabeth A. Stafford issued her report and recommendation, recommending

that Defendant's motion be granted, Plaintiff's request for leave to amend be denied, and Plaintiff's claims be dismissed with prejudice.

## I.

In her original complaint Plaintiff Peterson alleges that, during her confinement by the MDOC, she held the lead position in the processing department of Michigan State Industries ("MSI") Dental Lab for over a year.   On January 2, 2012 she was allegedly demoted and reassigned to the Set-Up Department.   Her immediate supervisor, Defendant Rocky Burris, informed her that she was being reassigned because she was "not getting along with anyone." Plaintiff alleges that a fellow inmate, Vincincia, informed Plaintiff that she had made a personal request to Defendant Burris to have Plaintiff reassigned. Plaintiff alleges that Inmate Vincincia's complaints also led to the demotion and reassignment of a fellow inmate named Jones.

## A.

Following her demotion, Plaintiff alleges that on January 9, 2012 Inmate Vincincia offered Plaintiff and fellow inmates parts that were stolen from the Prison's education department while Defendant Burris was out to lunch.  After Peterson allegedly refused to accept the stolen equipment, Inmate Vincincia raised her hand as if to hit Peterson but did not actually hit Peterson. Peterson reported the incident to Burris when he returned.  Instead of punishing the inmate, Peterson claims that Burris told her that "You get under people's skin."  Peterson claims that Burris did not punish the other inmate due to their "overfamiliarization".

Plaintiff alleges that in March of 2012 Defendant Burris wrote her the first of three improper counseling memos.  The first memo reprimanded her for arguing with a coworker on a day that Burris had been out on sick leave: "In other words, Mr. Burris was not present when this alleged argument happened."  Indeed, Peterson claims that the argument never took place, and

therefore she was improperly reprimanded.  On May 30, 2012 Plaintiff filed a grievance regarding her demotion and pay reduction, arguing that a fellow inmate named Lemon was treated differently in that she was demoted but continued to receive the higher pay rate.  Plaintiff also grieved the stolen equipment incident and her first counseling memo. Plaintiff's grievance was denied on June 14, 2012.

While the grievance appeal was pending, on August 20, 2012 Peterson received another counseling memo for leaving a critical tool out. Although Peterson asserts that it was unintentional, she concedes that this second counseling memo was valid.

On August 27, 2012, Peterson received a third counseling memo for having a "poor attitude."  During a particularly heavy rain, a hole in the MSI Dental Lab ceiling began leaking. According to Peterson "[t]he conditions were so poor that some of the electricity to the lighting was disconnected in order to prevent electrocution or any other accidents that could have occurred because of the extreme leaking."  Compl. 7.  Despite the danger, Burris did not allow Peterson to move to another area.  Instead, he permitted Peterson to move to a different seat within the same area.  Peterson, however, "was reluctant to move . . . for two (2) reasons: 1) She was in possession of a critical tool . . . 2) The plaintiff's negative history with Mr. Burris . . . ." Compl. 7.  As a result of Peterson's reluctance to move seats, Burris wrote the third and final counseling memo stating that Peterson had a "bad attitude."  Burris then terminated Peterson's employment.

Peterson then filed additional grievances and appeals, all of which were rejected.  She claims that despite exhausting all her administrative remedies, Defendants "have violated the plaintiff's constitutional rights by failing to address valid concerns that include but are not limited to Mr. Burris' ill will and retaliation against the plaintiff for questioning and reporting the

deplorable work conditions, which ultimately resulted in the plaintiff being wrongfully terminated from employment in the MSI Dental Lab."  Compl. 9.

**B.**

On July 31, 2014, Peterson filed suit in this Court, raising six claims: (1) Deliberate Indifference in violation of the Eighth Amendment; (2) Equal Protection in violation of the Fifth and Fourteenth Amendments; (3) Libel and Slander under Michigan law; (4) Religious Discrimination in violation of the First and Fourteenth Amendments pursuant to the Religious Land Use and Institutionalized Person Act ("RLUIPA"); (5) Sexual Harassment in violation of federal and state law; and (6) Procedural Due Process under the Fourteenth Amendment.  On November 17, 2014, Peterson filed an "Amended Complaint" that added two Defendants to the litigation: Michigan State Industries and Millicent Warrant, the warden.  On May 21, 2015, the Magistrate Judge issued a report recommending that Peterson's complaint be summarily dismissed for failure to state a claim.

On May 21, 2015, the Magistrate Judge issued a report recommending that Peterson's complaint be summarily dismissed for failure to state a claim. That report was adopted in part and rejected in part on June 17, 2015. *See* ECF No. 42.  This Court agreed that Plaintiff had failed to state a claim of religious discrimination, of sexual harassment, or that her procedural due process rights had been violated.  However, the Court found that Plaintiff had adequately stated an equal protection violation, claims of deliberate indifference, and that she had been subject to libel and slander under Michigan law. Plaintiff was therefore permitted to proceed to discovery on those claims.

Under the original scheduling order, the parties were granted until October 21, 2015 to conduct discovery. The discovery deadline was later extended to February 21, 2016. After a

discovery dispute regarding Plaintiff's attempts to obtain a jail roof survey related to the issue of whether the jail roof was leaking, Plaintiff was granted until October 27, 2016 for the limited purpose of attempting to obtain a proper, redacted version of the survey. *See* ECF No. 89.

## II.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co*., 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the magistrate judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). Plaintiff now objects to each of the magistrate judge's conclusions.

## III.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The opposing party may not

rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal quotations omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.

## A.

In her first objection, Plaintiff Peterson argues that she should be granted an opportunity to present evidence that Defendants' actions caused her high blood pressure. To demonstrate a claim of deliberate indifference under the Eighth Amendment, a plaintiff must meet an objective component and a subjective component. First, she must show that he has an objectively "sufficiently serious" medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting . *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, she must show that the prison official had a subjectively "sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834). *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

With regard to the first prong, the  Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) holds that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."  Plaintiff therefore had the burden of proving that Defendants' alleged deliberate indifference caused her some physical injury.  The only physical injury alleged by Plaintiff was high blood pressure.

- 6 -

While this allegation was sufficient at the pleading stage, at this summary judgment stage Plaintiff had the burden of presenting evidence that her high blood pressure was sufficiently serious medical need.  Plaintiff's medical records do not show any high blood pressure, or hypertension, resulting from the incidents in the prison dental lab.  Instead, her medical records show that Plaintiff had been experiencing high blood pressure for at least two years before the incidents in question.  *See* ECF No. 72 Ex. E.  She therefore cannot demonstrate that Defendant's alleged acts caused her a sufficiently serious medical condition. Plaintiff's speculation about her blood pressure levels is irrelevant in the face of her own medical records.  Because Plaintiff has not met her burden of demonstrating a physical injury caused by Defendants' actions, her deliberate indifference claim will be dismissed.

**B.**

In her second objection, Plaintiff Peterson argues that the magistrate judge erred in recommending dismissal of her equal protection claim. The Equal Protection Clause of the Fourteenth Amendment prohibits discrimination by the government that "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (citation omitted).  Plaintiff does not contend that a fundamental right has been burdened.  Instead, she claims that she was demoted and reassigned from her dental lab position because she is an African American and thus a member of a protected class.

Unequal treatment of persons who are "entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Batra v. Bd. of Regents*, 79 F.3d 717, 721 (8th Cir. 1996) (quoting *Snowden v. Hughes*, 321 U.S. 1, 8, (1944)).  In other words, "an inmate must prove that a racially

discriminatory intent or purpose was a factor in the decision of the prison officials." *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). To avoid summary judgment on her Equal Protection claim, Plaintiff must "identify affirmative evidence from which a jury could find [proof of] the pertinent motive," race discrimination. *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998).

Such impermissible motive may be proven through either direct evidence of discrimination, or under the *McDonnell Douglas* "burden-shifting scheme." *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Umani v. Michigan Dept. of Corrs.*, 432 F. App'x 453, 458 (6th Cir. 2011). Plaintiff Peterson has not presented any direct evidence of discrimination. Therefore, to state a claim that her right to equal protection was violated Plaintiff was required to demonstrate that she: "(1) is a member of a protected group, (2) suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside of the protected class or was treated differently than similarly-situated members of the unprotected class. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007).

At issue in this case is whether Plaintiff has sufficiently demonstrated that she was treated differently than similarly-situated members of her class. The magistrate judge determined that Peterson had not demonstrated that she was treated differently than similarly situated inmates, and thus had not established a prima facie case of race discrimination. Peterson objects to this finding.

At this summary judgment stage it was Plaintiff's burden to come forward with some evidence in support of her claim that Defendants intentionally treated her differently because of

- 8 -

her race.  This she has not done.  As noted by the magistrate judge, Plaintiff has not presented any evidence that she was treated differently than similarly-situated prisoners outside of the protected class.   To demonstrate that she was "similarly situated" to other comparable employees, Plaintiff was required to show that "all of the *relevant* aspects of [her] employment situation were 'nearly identical' to those of [a comparable worker's] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998) (emphasis in original) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)).

Plaintiff alleges that a fellow white inmate, Inmate Lemon, was demoted but continued to draw a lead pay rate.  Defendants have presented evidence that this allegation is incorrect. *See* Burris Aff., ECF No. 72-4.  Instead, Defendant Burris has provided an affidavit swearing that Inmate Lemons is the most senior lab tech and is employed as a floater. *Id*.  Burris further declares that Inmate Lemon has never been demoted, and draws line lead pay due to her specialized skill sets.  Inmate Lemon is therefore not similarly situated to Plaintiff Peterson, and Plaintiff has not identified any inmate in a sufficiently comparable situation to her own.  She therefore has failed to meet her burden of coming forward with evidence that would create a triable issue of fact that she was demoted and reassigned because of her race.  Plaintiff's second objection will be overruled.

## C.

In her third objection Plaintiff Peterson does not object to the magistrate judge's conclusion that her state law claims fall outside the relevant statute of limitations.  Instead, she argues that she should be permitted to amend her complaint to add a claim of intentional infliction of emotional distress under Michigan law.  This is an argument that Plaintiff has raised for the first time in objections to the magistrate judge's order.  Issues raised for the first time in

objections to a magistrate judge's report and recommendation are deemed waived. *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998).

Even so, Plaintiff's proposed amendment would be futile. Under Federal Rule of Civil Procedure 15, a court should "freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). Factors that courts should consider when determining whether to grant leave to amend include "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment…." *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 484 (6th Cir. 1973). "Decisions as to when justice requires amendment are left to the sound discretion of the trial judge[.]" *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 591 (6th Cir. 1990).

The Michigan Supreme Court has established four necessary elements for a *prima facie* case of intentional infliction of emotional distress: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lewis v. Legrow*, 258 Mich. App. 175, 196 (Mich. Ct. App. 2003). (citation omitted). Plaintiff has not come forward with allegations, let alone evidence, of such extreme conduct on the part of Defendants. Her third objection will be overruled.

**D.**

Plaintiff next argues that the magistrate judge erred in finding that qualified immunity shielded Defendants from Plaintiff's individual capacity claims. Plaintiff argues that qualified immunity does not apply because (1) Defendant Burris was aware that the prison facility roof occasionally leaked after unusually heavy rains; (2) MSI knew that Inmate Lemon was demoted but was retained the higher pay rate; and (3) Defendants were aware that she was threatened by another inmate while Burris was out to lunch, as evidenced by the fact that Defendant Burris discontinued going to lunch.

Under 42 U.S.C. § 1983, Government officials are immune from civil liability "when performing discretionary duties, provided 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Whitney v. City of Milan*, 677 F.3d 292, 296 (6th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether a government official enjoys qualified immunity for a particular act, courts must apply a two-prong test: "(1) we inquire whether the facts, viewed in the light most favorable to the nonmoving party, show the officer's conduct violated a constitutional right; and (2) if so, then we determine whether the constitutional right was clearly established by asking whether a reasonable official would understand that what he is doing violates that right. *Whitney*, 677 F.3d at 296 (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). "A right is clearly established if the contours of the right are sufficiently clear so that a reasonable officer would have understood, under the circumstances at hand, that his behavior violated the right." *Bailey v. Kennedy*, 349 F.3d 731, 741 (4th Cir.2003) (internal quotation marks and alteration omitted). In other words, "existing precedent must have placed the statutory or constitutional question ... beyond debate." *Occupy Nashville v. Haslam*, 769 F.3d 434, 443 (6th Cir. 2014) (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014).

As set forth above, Plaintiff has not presented facts demonstrating that Defendants' conduct amounted to a violation of a constitutional right. As noted above, Inmate Lemon was not demoted, but was instead employed as a "floater" and retained her higher pay rate due to her specialized skills.  Even if Plaintiff is correct that Defendants were aware of the leaking roof and the lunchtime threat from a fellow inmate, Plaintiff has not demonstrated that these occurrences amounted to a denial of any clearly established constitutional right. Defendants are therefore entitled to qualified immunity.

**E.**

In her final objection, Peterson again argues that she should be permitted to amend her complaint to add a claim of intentional inffliction of emotional distress. She expands on her previous argument by asserting that Defendants' basis for demoting her and issuing her counseling memos had no basis in fact.  Plaintiff has provided no evidence in support of these allegations other than her own subjective belief.  As already noted above, Plaintiff cannot raise this argument for the first time in an objection to a magistrate judge's report and recommendation.  Furthermore, Plaintiff has not identified any extreme or outrageous conduct satisfying the requirement for proceeding on a claim of intentional infliction of emotional distress.  Indeed, Plaintiff's proposed claim appears to undercut her previous claims of race discrimination in that she concedes that she was terminated because her fellow employees did not get along with her; or in her words, "because a bunch of mean girls asked him."  Plaintiff's proposed amendment would be futile and will be denied.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's objections, ECF No. 99, are **OVERRULED**.

- 12 -

It is further **ORDERED** that the magistrate judge's report and recommendation, ECF No. 97, is **ADOPTED**.

It is further **ORDERED** that Defendants' motion for summary judgment, ECF No. 72, is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims are **DISMISSED with prejudice.**


s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge
Dated: February 6, 2017

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail and on Angel Peterson #240544, Huron Valley Complex, 3201 Bemis Road, Ypsilanti, MI 48197 by first class U.S. mail on February 6, 2017.

s/Michael A. Sian
Michael A. Sian, Case Manager